Hauptle et al., Appellants, *v.* Bausch & Lomb Optical Company.

Argued June 17, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*John C. Dowling,* with him *Huette F. Dowling,* and *Dowling and Dowling,* for appellants.

*Richard B. Wickersham,* with him *Metzger, Wickersham & Knauss,* for appellees.

OPINION BY MONTGOMERY, J., September 16, 1965:

This appeal is from the order of the Court of Common Pleas of Dauphin County affirming the decision of the Workmen's Compensation Board which denied appellant benefits for an accident allegedly sustained by her husband, who is now deceased.[1] The decision of the board and the order of the court below were based on findings that there had been no accident and that there

---

[1] Claimant died August 2, 1964, and his widow individually and as administratrix of his estate was substituted as claimant.

had been no notice of an accident given to the employer within 120 days of the date on which appellant claims the accident had occurred, as required by the Act of June 2, 1915, P. L. 736, as amended, Sections 311, 312, and 313, 77 P.S. §§631, 632, and 633.

It is appellant's contention that the board disregarded competent evidence in making its findings, and that they are not supported by the evidence. Although the referee found that appellant's husband had suffered an injury by accident on October 25, 1961, resulting in the permanent loss of the use of the left eye, and made no finding on the question of notice to the employer, the findings and conclusions made by the board are those which govern. The board is the final arbiter of the facts; the referee is but the agent of the board which may reject, change or adopt the findings of the referee. *Dixon v. Shapiro,* 203 Pa. Superior Ct. 535, 201 A. 2d 231 (1964).

Where the decision of the board is against the party having the burden of proof, the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. *McCafferty v. Masten Transportation, Inc.,* 205 Pa. Superior Ct. 239, 209 A. 2d 11 (1965); *Mohler v. Cook,* 205 Pa. Superior Ct. 232, 209 A. 2d 7 (1965). The board may reject the testimony of any witness in whole or in part, the credibility to be given the witnesses and the weight to be accorded their testimony being for the board. *Erwin v. L. & H. Construction Co.,* 192 Pa. Superior Ct. 632, 161 A. 2d 639 (1960).

Viewing the record in the manner dictated by the foregoing rules, the facts appear as follows:

Claimant was 58 years of age and had been employed with defendant as a grinder of lenses for over 38 years until he entered the hospital for treatment of his eye

on January 15, 1962. Following hospitalization on that date claimant had an operation on his left eye and subsequently lost the use of it.

Previously, on October 30, 1961, claimant had visited his family doctor for reasons other than an eye injury, at which time the doctor noticed an ulceration of claimant's left eye and recommended that he see an eye specialist. On November 1, 1961, claimant told Mr. Coyle, defendant's plant manager, of this recommendation because of the inflammation in his eye and as a result claimant consulted Dr. Coleman, an eye specialist, who later performed the operation.

Claimant filed his claim petition for workmen's compensation on July 2, 1962, alleging therein that on October 25, 1961, while grinding lenses for his employer, the defendant, a piece of emery flew into his left eye causing the loss of sight therein. He testified at the hearing before the referee, "A piece of emery flew in my eye and I went and washed it out as good as I could, but I didn't think there would be any trouble." He testified further that frequently he had emery fly into his eyes and washed it out.

The question before us is not whether emery flew into claimant's eye on other occasions without injuring the eye, but it is whether on October 25, 1961, the same thing occurred with injurious results.

The evidence is conflicting on the issue of the accident. Claimant said he washed his eye out and thought there would be no trouble with it. His family doctor, while treating him for some other disorder, noticed his eye to be scratched and inflamed and recommended a visit to an ophthalmologist, to whom he gave as part of his history that, "On October 25, 1961, at 12:00 Noon, while . . . grinding lenses at Bausch & Lomb, a piece of emery flew into his left eye . . ." Dr. Coyle testified that, in his opinion, the condition in claimant's eye was caused by a foreign body although he

had found none in the eye; but, on cross-examination, he admitted that it could have been caused by a virus.

Defendants offered the testimony of another ophthalmologist to the effect that he did not know the cause of claimant's ulcerated eye and that it could have been caused by any number of reasons. Claimant's foreman, Mr. Enk, testified that he had been advised by claimant that his eye was injured but no mention had been made of an accident in the course of his employment on October 25, 1961. It was also shown that claimant had applied for and received benefits under a group health and accident policy issued by the Metropolitan Life Insurance Company providing benefits for loss not covered by workmen's compensation. Defendants also stressed the testimony of claimant that he had told no one about the incident of October 25, 1961, except Dr. Worrell and Dr. Coleman who attended him, and Mr. Coyle. His conversation with Mr. Coyle was in part, "Q. You told Mr. Coyle that the eye was scratched? A. That's right. Q. Did you say when or how the eye had become scratched? A. Not at the time being, no. . . . Q. At any time in that two month period, [following October 25, 1961, during which he worked] sir, or whatever the exact date is, did you tell any of your fellow employes, or discuss with any of your fellow employes at the Bausch & Lomb place of business, that you had had a foreign body fly in to your eye while working? A. No, I hadn't, but I was so used to keeping things to myself all them years."

Although the board did not discuss the testimony concerning the happening of an accident to any extent, it did make a specific finding that claimant did not suffer an injury while in the course of his employment.

We are of the opinion that the board, in making such finding, did not capriciously disregard competent evidence which might have led to a different finding. The fact that claimant washed out of his eye any emery

powder that might have resulted from the grinding operation, as he had done on many other occasions, and had disregarded same until four days later after his doctor had noticed that his eye was scratched and inflamed; and the fact that he did not report an accident but applied for benefits under a policy intended to protect him from accidents and illhealth not covered by workmen's compensation, support as plausible and reasonable the finding made by the board. This finding is further supported by the testimony of two doctors who said that the injury might have been due to non-traumatic causes.

Likewise, the question of notice was also subject to conflicting testimony. Claimant's cause was dependent on either the request he made of Mr. Coyle to have him call an eye specialist or on the testimony of his wife corroborated by her son, who said she told Mr. Coyle on her visit to the hospital when her husband was first admitted in January, 1962, that her husband should have workmen's compensation. Mr. Coyle denied that Mrs. Hauptle had ever mentioned workmen's compensation and insofar as claimant's request to him on November 1, 1961, he said: "A. He came in that morning and said that his family doctor recommended he see an eye doctor. . . . Q. Did he make any other discussion about why he needed to see the eye doctor, or what had caused this need to see an eye doctor? A. He made the statement that he wanted to see an eye doctor on the recommendation of his regular doctor. But not for any particular cause. It was just he had an inflamed eye. Q. Did he make any statement or remark to you that an accident had taken place at any specific date or place or in the course of his employment? A. There was no mention whatsoever, other than that as far as an accident is concerned." In view of the wide latitude which the board has in weighing the evidence and passing on the credibility of witnesses, *Symons v. Na-*

*tional Electric Products, Inc.,* 414 Pa. 505, 200 A. 2d 871 (1964), we may not disturb its finding based on the foregoing testimony.

Inasmuch as we have reviewed the two basic questions in the manner just stated, we need not discuss the other questions raised by appellant.

Order affirmed.

